UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KIMBERLY J.,<br><br>                    Plaintiff,<br><br>    v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | Case No. 2:22-cv-1421-TLF<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 3. Plaintiff challenges the Administrative Law Judge ("ALJ's") decision finding that plaintiff was not disabled. Dkt. 5, Complaint.

## I.     ISSUES FOR REVIEW

A.  Whether the ALJ Properly Evaluated Plaintiff's Allegations About Impact of Her Impairments on Ability to Perform Work Activity

B.  Whether the ALJ Properly Evaluated Medical Opinion Evidence

C.  Whether the ALJ's RFC Determination Was Supported by Substantial Evidence

## II.     BACKGROUND

Plaintiff filed her application for DIB on April 14, 2017, alleging a disability onset date of March 1, 2017. Administrative Record ("AR") 68–69, 83. After plaintiff's application was denied initially and on reconsideration, ALJ Raymond Souza held a hearing in June 2019 and issued a decision in August 2019 finding plaintiff not disabled. AR 12–66, 81, 83, 88. Based on the stipulation of the parties, this Court reversed the ALJ's decision and remanded for further proceedings. AR 1125–27. ALJ Cecilia LaCara held a second hearing in June 2022 and issued a decision in August 2022, again finding plaintiff not disabled. AR 1031–85. Plaintiff now seeks judicial review of the ALJ's August 2022 decision.

### III.      STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### IV.      DISCUSSION

In this case, the ALJ found that plaintiff had the following severe medically determinable impairments: status post cervical spine surgery; rheumatoid arthritis; obesity; hypertension; fibromyalgia; chronic pain syndrome; depressive disorder; anxiety disorder; and post-traumatic stress disorder. AR 1037. Relying on vocational expert ("VE") testimony, the ALJ found at step four that plaintiff could not perform past

relevant work, but could perform other light work at step five of the sequential

evaluation; therefore, the ALJ determined at step five that plaintiff was not disabled. AR

1039–49.

    A.  <u>Whether the ALJ Properly Evaluated Plaintiff's Allegations About Impact of</u>
<u>Impairments</u>

       Plaintiff contends the ALJ erred in discounting her subjective symptom testimony.

Dkt. 11, at 2–9. Plaintiff only raises the ALJ's discussion of her physical symptoms,

therefore Court will only assess whether the ALJ properly discounted her statements

regarding her physical symptoms and decline to address the ALJ's evaluation of her

mental health symptoms. *See Carmickle v. Commissioner, Social Sec. Admin.*, 533

F.3d 1155, 1161 n. 2 (9th Cir. 2008).

       Plaintiff testified she is no longer able to work because of severe back, neck, and

hip pain, swelling in her hands, and a frozen shoulder. *See* AR 1067–70. She stated

she has difficulties standing up, is frequently exhausted, and is in pain when she is on

her feet and moving. AR 1067. She stated that due to her constant back pain, she

cannot bend over, crouch down, and sit or stand for too long. AR 1069.

       She stated that due to the swelling of her hands and weakness in her arms, she

has difficulties holding things, carrying anything heavier than a half-gallon of milk, and

making a fist. AR 1070–71. She stated that despite undergoing surgery and taking

medication for her neck, she still experiences neck pain. AR 1072. Plaintiff testified she

would spend most of her days on the couch or in her bed, watching television, resting,

or sleeping. AR 1078. She stated she is able to prepare light meals, fold towels for a

few minutes, and drive to the grocery stores and her doctor appointments, but only for a

1    few miles. AR 1075–78. She stated she tries to go for walks once a week, but can only

2    walk for eight to ten minutes. AR 1076–77.

3        The ALJ's determinations regarding a claimant's statements about limitations

4    "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722

5    (9th Cir. 1998) (citing *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In

6    assessing a plaintiff's credibility, the ALJ must determine whether plaintiff has presented

7    objective medical evidence of an underlying impairment. If such evidence is present and

8    there is no evidence of malingering, the ALJ may only reject plaintiff's testimony

9    regarding the severity of his symptoms for specific, clear and convincing reasons.

10    *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504

11    F.3d 1028, 1036 (9th Cir. 2007)); *see also*, *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th

12    Cir. 2022).

13        Here, the ALJ found that while the plaintiff's impairments could reasonably

14    produce the symptoms plaintiff alleges, plaintiff's statements regarding the intensity,

15    persistence, and limiting effects of those symptoms were not as "entirely consistent with

16    the medical evidence and other evidence in the record." AR 1040.

17        Specifically, the ALJ discounted plaintiff's testimony based on her improvement

18    from surgery, therapy, and medication. AR 1040–42. "Impairments that can be

19    controlled effectively with medication are not disabling for the purpose of determining

20    eligibility for [social security disability] benefits." *Warre ex rel. E.T. IV v. Comm'r of Soc.*

21    *Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). In discounting plaintiff's testimony,

22    the ALJ cites records spanning from plaintiff's cervical surgery in July 2017 through her

23    treatment notes from March 2022. *See* AR 1040–42.

24

25

Plaintiff first underwent surgery for her cervical spine in July 2017. AR 446–49. Her follow-up treatment notes show improvement in her neck pain, excellent mobility in her spine, and normal strength in her upper and lower extremities, though she continued to note residual symptoms. AR 450, 455, 480. In November 2017, plaintiff reported that though her cervical spine was doing well, she was experiencing back pain. AR 459–60. Plaintiff underwent back surgery in December 2017 and reported afterwards that her lumbar region was markedly improved, with imaging showing it was stable and aligned. AR 564, 576–77. Plaintiff's cervical spine remained excellent and her upper and lower extremity remained intact, though her back was sore. AR 576–77, 602, 611.

After plaintiff took a fall in 2018, she continued to report chronic pain and remained stable with medication, though one of her treating physicians began to consider the possibility of fibromyalgia. AR 633, 1016, 1020 ("She is also dealing with underlying fibromyalgia type of issues."), 1021–22. Plaintiff started taking medication for fibromyalgia and was found to tolerate the medication well, though she continued to report stiffness in the morning, pain in her neck, hips, and hands, and swelling in her legs. AR 1018, 1019 ("The patient is not changing for the better of for the worse."), 1023. Plaintiff's other treating sources considered other causes for plaintiff's continued report of fatigue, multiple joint pain, headaches, and nausea, specifically rheumatoid arthritis. AR 1518–23, 1542, 1599 ("Possibly seronegative rheumatoid arthritis as there is no other medical condition that would explain her symptoms.").

Plaintiff's musculoskeletal exams in late 2020 and 2021 revealed swelling or tenderness in her wrists, knees, and ankles, and pain in her shoulders and elbows with

range of motion. AR 1581, 1592, 1597, 1605–06. Plaintiff reported feeling better from medication in October 2021 and was found to have made some improvements in December 2021, though she also continued to have "severe exacerbation of rheumatoid arthritis with inability to fully make fists." AR 1694. By January 2022, plaintiff reported "60% improvement in symptoms overall," though she also reported numbness and tingling in her hands, difficulty with standing and sitting for prolonged time, and pain in her neck and shoulder. *See* AR 1749.

The following month, plaintiff reported that her hands felt "a little better," with x-rays of her hands showing normal findings, but she was still unable to make a fist and had pain in her thighs. AR 1706. By March 2022, changes were made to plaintiff's medication, but her physician noted no symptom improvement. AR 1747. Plaintiff also reported pain in her neck and shoulder, and her musculoskeletal exam showed her neck and trunk range of motion moderately restricted and painful with extension. *See id*.

The records cited by the ALJ show that plaintiff reported several instances of improvement in her symptoms after surgery and changes to her medication. AR 455, 480, 576, 602, 1016, 1749. But the medical evidence as a whole does not show that plaintiff recovered in such a way that is inconsistent with her statements. Not only did plaintiff continue to report overall body pain—her examinations also constantly revealed restrictions in her movements, including inability to make a fist. *See* AR 1018–23, 1518–23, 1542, 1599, 1747. Plaintiff's continued reports of pain and fatigue throughout the record, even with her reports of improvement, are especially probative in light of plaintiff's fibromyalgia.

Social Security regulations "recognize[] that the symptoms of fibromyalgia 'wax and wane' so that a person may have 'bad days and good days'" therefore consideration of a claimant's longitudinal record whenever possible is advised. *See* Social Security Ruling ("SSR") 12-2P, at *6; *see also Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017) (finding the ALJ erred in discounting plaintiff's symptoms about chronic pain based on objective medical records, including X-rays and MRIs of claimant's neck and back because fibromyalgia is diagnosed "entirely on the basis of patients' reports of pain and other symptoms," and "there are no laboratory tests to confirm the diagnosis."). Here, plaintiff's longitudinal record shows that even though plaintiff would report some improvement in one appointment, she would then report body and joint pain in her following appointments. And, her physical examinations continuously detailed swelling, weakness, and pain throughout her body. AR 1581, 1592, 1597, 1605–06, 1694. Overall, the ALJ's finding that plaintiff's allegations as to the intensity of her symptoms was inconsistent with objective medical evidence and her reports of improvement is not supported by substantial evidence, especially when considering the unique nature of fibromyalgia. Accordingly, in discounting plaintiff's testimony for this reason, the ALJ erred.

The ALJ also discounted plaintiff's testimony based on her activities of daily living. AR 1043–44. An ALJ may discount a claimant's symptom testimony when it is inconsistent with the claimant's general activity level. *See Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Here, the ALJ points to plaintiff's studying, going to her appointments, grocery shopping, and taking an eight-day vacation. AR 1043–44. But plaintiff's ability to shop

for groceries and attend her doctor appointments do not contradict her statement, as plaintiff testified to them. AR 1075–78. There is also nothing in the record to show that plaintiff's studying and her vacation in Oregon consisted of activities that would require exertion greater than plaintiff's alleged limitations; therefore, in discounting plaintiff's testimony based on her activities, the ALJ also erred.

B. <u>Whether the ALJ Properly Evaluated Medical Opinion Evidence</u>

Plaintiff contends the ALJ erred in evaluating the medical opinions of (1) Dr. Ken Takemura, (2) Dr. Percy Balderia, and (3) Nicole Macaluso, Physical Therapist. Dkt. 11, at 12–17.

Plaintiff filed her application after March 27, 2017. AR 68–69, 83. For applications filed after March 27, 2017, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness, with the two most important factors being "supportability" and "consistency." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022); 20 C.F.R. § 416.920c(b)(2). Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion is consistent with other evidence from medical and nonmedical sources. 20 C.F.R. § 416.920c(c)(1), (c)(2). Under the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

Dr. Takemura opined that based on plaintiff's physical impairments (including fibromyalgia), plaintiff would need to take unscheduled breaks every one to two hours during an eight-hour workday. *See* AR 367–70. Dr. Balderia similarly opined plaintiff would have to take additional breaks more than ten times during an average workday.

1    AR 1681. Ms. Macaluso also opined that plaintiff would need to take four unscheduled

2    breaks during an eight-hour workday and lie down. AR 383.

3         The ALJ first discounted the medical opinions of Dr. Takemura, Dr. Balderia, and

4    Ms. Macaluso altogether, finding they were inconsistent with objective medical

5    evidence, including imaging of plaintiff's spine, knees, and hands, plaintiff's physical

6    examinations, and plaintiff's response to treatment. AR 1046. In doing so, the ALJ cites

7    the same records cited to discount plaintiff's physical symptom testimony. *See id*. As

8    discussed *supra* Section IV.A., the Ninth Circuit has cautioned against relying upon

9    normal physical examination findings to discount medical opinions

10   concerning fibromyalgia, noting that findings of normal muscle strength, tone, and

11   stability, as well as a normal range of motion, are "perfectly consistent" with

12   debilitating fibromyalgia, a condition diagnosed "entirely on the basis of patients' reports

13   of pain and other symptoms." *Revels*, 874 F.3d at 663, 666 (citing *Benecke v. Barnhart*,

14   379 F.3d 587, 590 (9th Cir. 2004).

15        As also discussed above, the symptoms of fibromyalgia "'wax and wane,'"

16   therefore when weighing medical opinions, the claimant's longitudinal record must be

17   considered. *See* SSR 12-2P. In the Court's discussion of the medical evidence in the

18   previous section, the Court found that plaintiff's longitudinal record as a whole does not

19   sufficiently show plaintiff had improved to such a magnitude that it would be a

20   reasonable basis to discount plaintiff's allegations of disability. Because the ALJ has

21   referred to the same medical evidence, the Court similarly finds here that plaintiff's

22   longitudinal record does not serve as a reasonable basis to discount the medical

23   opinions of Dr. Takemura, Dr. Balderia, or Ms. Macalusa.

24

25

The ALJ also discounted the medical opinions of Dr. Takemura and Dr. Balderia separately -- based on plaintiff's activities of daily living, namely: studying to be a certified public accountant, reports of going out of the house once a day, performing household chores, and ability to walk three times a week. AR 1046–47 (citing AR 85, 249, 288, 376, 1747, 1749). Yet, the ALJ fails to explain how Dr. Takemura's or Dr. Balderia's medical opinions regarding plaintiff's work limitations and need to take multiple breaks during an eight-hour workday are undermined by plaintiff's ability to partake in these activities. Thus, in discounting their opinions based on alleged inconsistencies with plaintiff's activities of daily living, the ALJ erred.

Finally, the ALJ discounted the medical opinion of Physical Therapist Macaluso, finding that, as a physical therapist, she would not be recognized under the Social Security disability regulations as an acceptable medical source. AR 1046. Yet, under the 2017 regulations, medical opinions are not set aside as less important based on the previous regulations' categories of acceptable" or "non-acceptable"—rather, 2017 regulations provide the ALJ must "'articulate . . . how persuasive [she] finds '*all* the medical opinions' from *each doctor or other source* . . .  and 'explain how [she] considered the supportability and consistency factors' in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (emphases added). Thus, discounting Ms. Macaluso's opinion based on her being a physical therapist was not a valid reason.

The ALJ also discounted her opinion based on not having an "objective foundation." AR 1046. How a medical source supports and explains their opinion is an important factor an ALJ must consider when weighing a medical opinion. *See* 20 C.F.R.

§ 404.1520c(c)(1). Here, the ALJ pointed out that Ms. Macaluso's treatment notes

lacked a "full residual capacities evaluation." AR 1046. But Ms. Macaluso had been

treating plaintiff for at least two months when she provided her opinion and had had the

opportunity to complete an initial physical exam of plaintiff, conduct various exercises,

and assess therapy plans, based on plaintiff's progress with her exercises. *See* AR

380–84, 393–414, 422–30.

Ms. Macaluso's opinion should be viewed in the context of the treatment notes –

notes that qualify as objective medical evidence under the regulations. *See* 20 C.F.R.

§§ 404.1502(f)("Objective medical evidence means signs, laboratory findings, or both."),

(g)("Signs means one or more anatomical, physiological, or psychological abnormalities

that can be observed, apart from your statements (symptoms). Signs must be shown by

medically acceptable clinical diagnostic techniques."). The ALJ did not make a finding

that the physical therapy treatment notes, and the diagnostic techniques used in the

physical therapy clinical evaluation and treatment, were not "signs" within the meaning

of this regulation. Accordingly, in discounting Ms. Macaluso's treatment based on its

lack of supportability, the ALJ also erred.

C. Harmless Error

An error is harmless only if it is not prejudicial to the claimant or "inconsequential"

to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*,

454 F.3d 1050, 1055 (9th Cir. 2006). In this case, the ALJ's errors were not harmless

because a proper evaluation of plaintiff's testimony regarding her physical symptoms

and the medical opinions of Dr. Takemura, Dr. Balderia, and Ms. Macaluso could

change the ALJ's RFC assessment and may affect the hypotheticals provided to the vocational expert.

D. Remedy

Plaintiff requests the Court to remand this matter be remanded for an award of benefits, or in the alternative, for further proceedings. Dkt. 11, at 17–19.

The Court may not remand for an award of benefits unless a remand for further administrative proceedings "would serve no useful purpose." *Burrell v. Colvin,* 775 F.3d 1133, 1141 (9th Cir. 2014). Remand for further proceedings is proper when "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014). Here, the Court has found the ALJ committed legal errors in discounting plaintiff's testimony and the medical opinions of Dr. Takemura, Dr. Balderia, and Physical Therapist Macaluso. A proper evaluation of plaintiff's testimony and the medical opinions discussed by the ALJ is necessary before a determination of disability is made. Additionally, the medical opinions of Dr. Takemura, Dr. Balderia, and Ms. Macaluso conflict with those of Dr. Magdaleno, Dr. Postovoit, and Dr. Masbhurn. AR 85–87, 373–78. It is the ALJ's role to resolve such conflicts in medical opinions. *Andrews v. Shahala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Therefore, remanding for further proceedings is appropriate here. *See generally, Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2016) (When reviewing whether to remand for a new hearing, or to award benefits, the district court must determine whether legal error occurred, and whether the record has been fully developed).

On remand, the ALJ is directed to reassess plaintiff's testimony regarding the impact of her impairments, re-evaluate the medical opinions, reassess plaintiff's RFC, and conduct the five-step review process. Plaintiff shall be allowed to present additional evidence in a de novo hearing.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings.

Dated this 19th day of May, 2023.

Theresa L. Fricke
United States Magistrate Judge